Rel: May 5, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

_____

## CR-2022-0984

_____

## Jon Thomas Wallis

### v.

### State of Alabama

### Appeal from Lauderdale Circuit Court
### (CC-11-340.60)

KELLUM, Judge.

Jon Thomas Wallis appeals the circuit court's summary dismissal of his petition for postconviction relief filed pursuant to Rule 32, Ala. R. Crim. P., in which he attacked his December 2011 conviction for the attempted murder of his wife, Tonya Wallis ("Tonya"), and his resulting

sentence of life imprisonment. This Court affirmed Wallis's conviction and sentence on direct appeal in an unpublished memorandum issued on April 26, 2013. Wallis v. State (No. CR-11-1029), 161 So. 3d 1232 (Ala. Crim. App. 2013) (table). The Alabama Supreme Court denied certiorari review, and this Court issued a certificate of judgment on August 16, 2013.

On February 25, 2019, Wallis filed the instant Rule 32 petition, his first. In his petition, Wallis alleged that newly discovered material facts entitled him to a new trial, specifically, the affidavits of Pamela Dimak ("Pamela") and Jordan Dimak ("Jordan"), which he attached to his petition. Other than the affidavits attached to the petition, a brief procedural history of the case, and bare assertions regarding actual-innocence claims under federal law, Wallis alleged no facts in his petition in support of his claim. Pamela's affidavit reads:

> "In June 2012 Tonya[1] Wallis came by my home to visit. While Tonya was at my home, she and I got onto the subject of what happened. Tonya said that [Wallis] did not shoot her. Tonya said it was an accident. She said she was trying to fake

---

[1]Tonya's name is spelled "Tanya" in both affidavits as well as in the pleadings by the parties. However, her name is spelled "Tonya" in the record from Wallis's direct appeal, and she signed an affidavit using the spelling "Tonya." Therefore, we use "Tonya" throughout this opinion, including in quotations from the affidavits and the parties pleadings.

a suicide attempt and she did not intend to cause the damage that she did. I asked her why the suicide attempt and she said that she had set [Wallis] up on a drug trafficking case and was going to have to testify. Tonya said she wanted out of the marriage and when she woke up in the hospital, the police told her what they thought had happened. Tonya said she just went along with what the police said happened. Tonya never told the police that she did it to herself."

(C. 21.) Jordan's affidavit reads:

"In June of 2012 Tonya Wallis came by my mother's home to visit one afternoon. We got onto the subject of everything that happened. Tonya Wallis said she accidentally shot herself. Tonya said she did not intend to cause the damage/injury that she did. She said that she had set [Wallis] up on a drug trafficking case and that she was going to testify against him. She said … it was supposed to be a faked suicide but when she woke up in the hospital after the brain surgery, the police were telling her their version of what they thought had happened. She said she went along with it. She also said she found her way out of the relationship and her way to get custody of … their son."

(C. 22.)[2]

On April 10, 2019, the State filed a response to Wallis's petition, arguing that the petition was precluded by Rules 32.2(a)(2), (a)(4), (b), and/or (c), Ala. R. Crim. P., that it was insufficiently pleaded, and that it

---

[2]We note that the affidavits were dated March 11, 2019, and March 4, 2019, respectively, after the date Wallis stated on the Rule 32 form he had mailed his petition. In addition, the circuit clerk stamped Wallis's petition and the affidavits as filed on March 11, 2019, the same date Pamela's affidavit was notarized.

failed to state a claim upon which relief could be granted. The State also requested an extension of time "to prepare the necessary pleadings to prove" the grounds of preclusion it had asserted, which the circuit court granted. (C. 30.) On July 12, 2019, the State filed an answer and a motion for summary dismissal, arguing that Wallis's newly-discovered-evidence claim was time-barred by Rule 32.2(c) because Wallis had failed to allege in his petition when he learned of the alleged statements Tonya made to Pamela and Jordan and that if Pamela and Jordan's affidavits "are to be believed," those statements were made in June 2012, almost seven years before Wallis filed his petition. (C. 34.) The State also argued that Wallis had failed to plead sufficient facts indicating that Pamela and Jordan's affidavits met the requirements in Rule 32.1(e), Ala. R. Crim. P., and that the claim was meritless. The State attached to its answer the record from Wallis's direct appeal as well as an affidavit from Tonya dated April 9, 2019, in which she stated:

> "My name is Tonya Wallis. I am the victim in this case. I was shot in the head by Jon Thomas Wallis.
>
> "The sworn testimony I gave at the jury trial in this case was the truth.

4

> "I have reviewed the 'Sworn Affidavit' of Pamela Dimak dated March 11, 2019, and the 'Sworn Affidavit' of Jordan Dimak dated March 4, 2019.
>
> "Both of these affidavits are untrue. I did not make the statements that the Dimaks allege that I made regarding this incident."

(C. 40.)

On July 30, 2019, Wallis filed a reply to the State's answer and motion for summary dismissal, arguing that neither Pamela nor Jordan visited him in prison or wrote to him after his conviction and that, therefore, he could not have obtained their affidavits earlier, and that he had filed his petition "one month after finding the newly discovered evidence." (C. 1029.)

The circuit court appointed counsel to represent Wallis and scheduled a hearing for November 13, 2019. Counsel filed a motion to continue the hearing and an amended petition on November 1, 2019. The circuit court accepted the amended petition and granted the motion to continue, resetting the hearing for March 2020. In the amended petition, Wallis alleged that his trial counsel had been ineffective for various reasons, and he reasserted his newly-discovered-evidence claim. At the beginning of the amended petition, Wallis alleged:

5

"Petitioner, Jon Thomas Wallis, is now and has been incarcerated in Limestone Department of Corrections in Harvest, Alabama, since February 23, 2012. Mr. Wallis contends that it has been impossible for him to adequately investigate, plead and prove his claims without the assistance of counsel. As the Alabama Supreme Court has recognized, 'an incarcerated inmate who does not have legal counsel is obviously hampered in his or her ability to interview witnesses, to gather records and to investigate factual questions and to conduct legal research.' Ex parte Jenkins, 972 So. 2d 159, 164 (Ala. 2005). Mr. Wallis contends that the grounds for this claim were not known and could not have been ascertained through reasonable diligence until the filing of his initial claim on March 11, 2019."

(C. 1042-43.) He also alleged the following facts in support of his newly-discovered-evidence claim:

"[Wallis] spoke with Jordan Nicholas Dimak in the Limestone County Department of Corrections facility on or about February 4, 2019, regarding his life sentence for the attempted murder of Tonya Wallis. Jordan Nicholas Dimak detailed a conversation that he and his mother, Pamela Dimak, had with Tonya Wallis shortly after [Wallis]'s conviction at their home in Colbert County, Alabama.

"[Wallis] immediately requested Jordan Nicholas Dimak to give a sworn statement outlining his encounter with Tonya Wallis in June 2012, for Jordan Nicholas Dimak to contact Pamela Dimak about her encounter with Tonya Wallis in June 2012 for a sworn, written statement detailing her conversation with Tonya Wallis.

"Both Jordan Nicholas Dimak and Pamela Dimak drafted an affidavit unfolding the victim recant of her testimony from trial, specific reasons for her inconsistent statements and her motive for being dishonest. The facts

6

establish that [Wallis] is innocent of the crime for which he was convicted or should not have received the sentence that he received.

"Mr. Wallis is not related in any form to Jordan Nicholas Dimak, nor his mother Pamela Dimak.

"The statements about [Tonya]'s recantation have a substantial indicia of reliability. First, the recantation is consistent with prior allegations of a self-inflicted injury which was precluded from trial by the State after Florence Police Department Criminal Investigator Kevin Jackson was afforded an opportunity to speak with potential witnesses and a motion later filed to preclude trial counsel from attempting further contact with said witnesses.[3] Second, [Tonya] was a co-conspirator with [Wallis] in several unrelated drug

---

[3]This is an incomplete, if not inaccurate, statement of what occurred at trial. Before trial, the State moved in limine to prohibit the defense from questioning Tonya or other witnesses during trial about alleged statements she had made that Wallis did not shoot her. In a deposition taken during Wallis and Tonya's divorce proceedings, Tonya had been questioned about statements she had allegedly made to certain individuals that Wallis did not shoot her and she denied having made any such statements. As a result of that question, the prosecutor asked a police officer to question the individuals Tonya had been asked about, and they all told the officer that Tonya had not made any statements indicating that Wallis did not shoot her. Defense counsel admitted that, he, too, had questioned the individuals and that they had "indicated that they didn't have conversations per se with" Tonya, although he alleged there were some inconsistencies regarding "what's happened, who's talked to who." (C. 548-49.) The trial court ruled that "[i]t would be unethical to try to impeach a witness with a prior inconsistent statement that you don't have a good faith basis" to believe was made, and defense counsel agreed, stating that he would not "bring up something I can't prove." (C. 549-50.) The trial court did not, as Wallis alleged in his amended petition and alleges in his brief on appeal, "preclude trial counsel from attempting further contact" with the individuals.

7

trafficking offenses which was nol prossed on July 19, 2011, less than two weeks before [Wallis] was indicted for the attempted murder of [Tonya] in this case. Third, [Tonya] in fact filed for divorce and custody of she and [Wallis]'s only child the day after the state nol prossed her drug trafficking charges and moved the court to transfer her juvenile proceedings regarding the custody of their child from Colbert County Juvenile Court to Lauderdale County Juvenile Court. Finally, while the recantation alone is not new evidence, the plausible motive for [Tonya] being untruthful regarding the injuries she sustained on April 27, 2011, is newly discovered evidence because it offers an explanation for [Tonya]'s failure to tell law enforcement what really happened the night of the incident, the facts surrounding [Tonya]'s plausible motive were not known by [Wallis] or [Wallis's] trial counsel at the time of the trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, Alabama Rules of Criminal Procedure, or in time to be included in any previous collateral proceeding. [Tonya]'s plausible motive could not have been discovered by any of those times through the exercise of due diligence. Most importantly, the facts establish [Wallis]'s actual innocence.

"In Smith v. State, 745 So. 2d 284 (Ala. Crim. App. 1999), the appellants contended that they established that there was newly discovered evidence because one of the victims subsequently stated that his testimony at trial was false. They argued that B.B. was 'the only witness that offered direct testimony concerning any acts of sexual abuse and that, pursuant to M.T., Sr. v. State, 677 So. 2d 1223 (Ala. Crim. App. 1995), it is an abuse of discretion not to allow a new trial when a defendant is convicted solely on the testimony of a recanting witness. As in M.T., Sr., the only witness account of the events that took place on the night in question other than [Wallis]'s account is that of [Tonya] in this present case. The newly discovered evidence which suggests a plausible motive for [Tonya] to have lied constitutes facts which establish that [Wallis] is innocent of the crime for which

8

he was convicted and is consistent with Mr. Wallis's actual claim of innocence from the beginning of the case."

(C. 1053-55.) In addition to Pamela and Jordan's affidavits, Wallis attached to his amended petition two pages from Tonya's medical records -- records that were introduced into evidence at Wallis's trial and, thus, known to Wallis -- in which it is stated under "patient notes" that the gunshot wound to Tonya's head was "possibly accidentally self inflicted" (C. 1062); the State's motion to nolle pros the criminal case against Tonya, dated July 11, 2011; and Tonya's petition for divorce and custody, dated July 12, 2011.

When the COVID-19 pandemic hit in early 2020, the circuit court placed Wallis's Rule 32 petition on the administrative docket, and the hearing scheduled for March 2020 was postponed. In February 2022, Wallis moved to schedule a hearing on his petition, and the circuit court scheduled a hearing for July 8, 2022. Two days before the scheduled hearing, Wallis moved to continue the hearing and the circuit court rescheduled the hearing for November 2022. On July 7, 2022, the State filed a response to Wallis's amended petition, arguing that both of Wallis's claims were time-barred by Rule 32.2(c) and were insufficiently pleaded. Ten minutes after the State electronically filed its response to

9

Wallis's amended petition, the circuit court issued an order summarily dismissing Wallis's petition, finding that Wallis's claims of ineffective assistance of counsel were time-barred by Rule 32.2(c) and that he had failed to plead sufficient facts indicating that his newly-discovered-evidence claim satisfied the requirements in Rule 32.1(e). On August 4, 2022, Wallis filed a postjudgment motion to reconsider, which was deemed denied on August 8, 2022.[4] This appeal followed.

## I.

Wallis first contends that the circuit court erred in summarily dismissing his claim of newly discovered material facts.

Rule 32.1(e) provides:

> "Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:
>
> "....

---

[4]See Loggins v. State, 910 So. 2d 146, 149 (Ala. Crim. App. 2005) (recognizing that a motion to reconsider is a valid postjudgment motion in the Rule 32 context but that a circuit court retains jurisdiction to modify a judgment in Rule 32 proceedings for only 30 days after the judgment is entered). The 30th day after the circuit court's summary dismissal of the petition was Saturday, August 6, 2022; therefore, the circuit court retained jurisdiction until the end of the day on Monday, August 8, 2022. See Rule 1.3(a), Ala. R. Crim. P.

"(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

"(1) The facts relied upon were not known by the petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;

"(2) The facts are not merely cumulative to other facts that were known;

"(3) The facts do not merely amount to impeachment evidence;

"(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and

"(5) The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received."

As noted above, in his original petition, Wallis did nothing more than attach the affidavits of Pamela and Jordan to the petition without pleading any specific facts regarding his claim. However, in his amended petition, Wallis clarified that he was not arguing that Tonya's alleged recantation of her trial testimony to Pamela and Jordan constituted newly discovered evidence, but rather, that her statements to Pamela and Jordan indicated a "plausible motive" for her to lie about Wallis

11

shooting her, i.e., to avoid prosecution for drug charges against her and to obtain custody of their son, and that these motives constituted newly discovered evidence. He reasserts in his brief on appeal that Tonya's alleged motive to lie, not her alleged recantation of her trial testimony, was newly discovered, and he maintains this allegedly newly-discovered motive satisfies each of the requirements in Rule 32.1(e). We disagree.

Initially, we point out that Wallis includes a plethora of additional facts in his brief on appeal that were not included in his petition or in his amended petition. However, in determining whether a postconviction claim was sufficiently pleaded, we consider only the facts alleged in the petition and any amendments thereto. Therefore, the additional facts Wallis asserts for the first time on appeal are not properly before this Court for consideration. See, e.g., Bearden v. State, 825 So. 2d 868, 872 (Ala. Crim. App. 2001) ("Although Bearden attempts to include more specific facts regarding his claims of ineffective assistance of counsel in his brief to this Court, those allegations are not properly before this Court for review because Bearden did not include them in his original petition before the circuit court.")

In his amended petition, Wallis made a bare and conclusory

allegation that, because he had been in prison since he was sentenced in February 2012, he did not know that Tonya had a "plausible motive" to lie about Wallis shooting her, and that he could not have ascertained that motive through the exercise of reasonable diligence until he spoke with Jordan in prison in February 2019 and learned that Tonya had disclosed her motive to Pamela and Jordan. Setting aside the fact that imprisonment is not itself sufficient to satisfy the requirement in Rule 32.1(e)(1), Wallis apparently believes that he could not have ascertained Tonya's "plausible motive" until Tonya openly admitted that motive. However, Wallis attached to his petition the State's motion to nolle pros the criminal charge against Tonya and Tonya's petition for divorce and custody, both of which were filed in July 2011, five months before his trial, and on which Wallis relies to support his theory of Tonya's motive to lie. Wallis did not allege in his petition or amended petition that he did not know before his trial that the criminal charge against Tonya had been dropped or that she had petitioned for divorce and custody of their child, nor did he allege any facts indicating why he could not have ascertained from these actions (without the alleged admission by Tonya) and Tonya's medical records, wherein it was stated that her gunshot

13

wound was possibly self-inflicted, that Tonya may have had a "plausible motive" to lie about him shooting her. Therefore, Wallis failed to plead sufficient facts to satisfy the requirement in Rule 32.1(e)(1).

Moreover, Wallis alleged no facts in his petition indicating that Tonya's alleged "plausible motive" to lie could be considered anything other than impeachment evidence. As the Alabama Supreme Court has explained:

> "'"Impeaching testimony" is that designed to discredit a witness, or to reduce the effectiveness of his testimony by bringing forth evidence to show why faith should not be accorded his testimony. [Citation omitted.] Evidence is "impeaching" so as to bar a new trial if it is outside the evidence already given and impeaches that evidence by attacking the character, <u>motives</u>, integrity, or <u>veracity</u> of the witness who gave the testimony.'
>
> "<u>Shepherd v. Southern Ry.</u>, 288 Ala. 50, 60-61, 256 So. 2d 883, 892 (1970).
>
> "Newly discovered evidence 'which merely tends to discredit an adverse party or his witnesses will not avail as a ground for a new trial, "as such testimony may be discovered in almost every case, and there must be an end to litigation."' <u>Fries v. Acme White Lead & Color Works</u>, 201 Ala. 613, 615, 79 So. 45, 47 (1918)."

<u>Talley v. Kellogg Co.</u>, 546 So. 2d 385, 388 (Ala. 1989) (emphasis added).

Therefore, Wallis also failed to plead sufficient facts to satisfy the

14

requirement in Rule 32.1(e)(3).

Because all five requirements in Rule 32.1(e) must be satisfied to establish newly discovered evidence and because Wallis failed to plead sufficient facts to establish at least two of the requirements, his newly-discovered-evidence claim is, as the circuit court found, insufficiently pleaded.

## II.

Wallis also contends that the circuit court erred in summarily dismissing his claims of ineffective assistance of counsel. He argues, as he did in his postjudgment motion, that Rule 32.2(c) does not apply to claims of ineffective assistance of counsel but, rather, that Rule 32.2(d) governs the "time limits for a Rule 32 petition based on ineffective assistance of counsel" and that "the time limit in Rule 32.2(c) should not apply when Rule 32.2(d) specifically applies to the situation." (Wallis's brief, p. 30.) He also argues that he is entitled to the benefit of equitable tolling.

Rule 32.2(d) provides:

> "Any claim that counsel was ineffective must be raised as soon as practicable, either at trial, on direct appeal, or in the first Rule 32 petition, whichever is applicable. In no event

15

can relief be granted on a claim of ineffective assistance of trial or appellate counsel raised in a successive petition."

Rule 32.2(d) contains no time limit for raising claims of ineffective assistance of counsel in a Rule 32 petition. It requires the claims to be raised as soon as practicable, and at the latest in the first Rule 32 petition, but it does not specify when the first Rule 32 petition must be filed. Therefore, Rule 32.2(d) does not supplant the limitations period set out in Rule 32.2(c), which provides, in relevant part:

"Subject to the further provisions hereinafter set out in this section, the court shall not entertain any petition for relief from a conviction or sentence on the grounds specified in Rule 32.1(a) and (f), unless the petition is filed: (1) In the case of a conviction appealed to the Court of Criminal Appeals, within one (1) year after the issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, Ala. R. App. P. …"

Claims of ineffective assistance of counsel are constitutional claims under Rule 32.1(a), and Rule 32.2(c) is clear and unambiguous that such claims must be raised within one year of the issuance of the certificate of judgment, regardless of the additional preclusion applicable to such claims in Rule 32.2(d). In this case, Wallis filed his petition almost six years after this Court issued the certificate of judgment finalizing his conviction and sentence.

16

As for Wallis's argument that he was entitled to the benefit of equitable tolling:

"It is well settled that equitable tolling of the limitations period in Rule 32.2(c) 'is available in extraordinary circumstances that are beyond the petitioner's control and that are unavoidable even with the exercise of diligence.' Ex parte Ward, 46 So. 3d 888, 897 (Ala. 2007). In other words, a Rule 32 petitioner is entitled to equitable tolling of the limitations period in Rule 32.2(c) if extraordinary circumstances beyond the petitioner's control prevented the petitioner from timely filing his or her Rule 32 petition despite the petitioner's exercise of diligence. See, e.g., Helton v. Secretary for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001) ('Equitable tolling can be applied ... when "extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.'); and Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (noting that a habeas corpus petitioner is entitled to equitable tolling if he or she establishes an 'extraordinary circumstance beyond his [or her] control that prevented him [or her] from complying with the statutory time limit'). 'Because equitable tolling is "an extraordinary remedy," it "is limited to rare and exceptional circumstances" and "typically applied sparingly."' Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009) (quoting Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005), aff'd, 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007)). Moreover, '[b]ecause the limitations provision is mandatory and applies in all but the most extraordinary of circumstances, when a petition is time-barred on its face the petitioner bears the burden of demonstrating in his petition that there are such extraordinary circumstances justifying the application of the doctrine of equitable tolling.' Ex parte Ward, 46 So. 3d at 897. 'A petition that does not assert equitable tolling, or that asserts it but fails to state any principle of law or any fact that would entitle the petitioner to the equitable tolling of the applicable limitations provision,

may be summarily dismissed without a hearing.' Id. at 897-98."

Kuenzel v. State, 204 So. 3d 910, 916-17 (Ala. Crim. App. 2015).

Wallis argues that, "as in Kuenzel, [he] did not specifically assert equitable tolling as a defense in his Amended Petition ..., [but] he 'attempted in his petition, albeit vaguely, to assert the doctrine of equitable tolling' in paragraphs five through eight of his Amended Petition." (Wallis's brief, p. 32.) Paragraphs five through eight in Wallis's amended petition appear in the section of his petition raising his various claims of ineffective assistance of counsel and read:

"5. Trial counsel filed a motion for funds to hire an investigator to aid in the preparation of his defense stating in his motion that he 'does not have the expertise in criminal investigation work to investigate the facts and witnesses surrounding the alleged crime with which [Wallis] is charged' and 'does not physically have the time to interview all the potential witnesses that will be essential to providing [Wallis] with an adequate defense' less than one week before Mr. Wallis's trial began. The court gave the duty to investigate real meaning: 'Reasonable performance of counsel includes an adequate investigation of the facts of the case, consideration of viable theories and the development of evidence to support those theories. Counsel has a "duty ... to investigate all witnesses who alleged possessed knowledge concerning [the defendant's] guilt or innocence."' (emphasis added) Lawrence v. Armontrout, 900 F. 2d 127, 130 (8th Cir. 1990); Wade v. Armontrout, 798 F. 2d 304, 307 (8th Cir. 1986) (finding that defense counsel's failure to investigate was not

18

the result of strategy or a reasonable decision not to investigate, but rather [stemmed] from lack of preparation).

"6. Trial counsel filed a motion for funds to hire an investigator, Mike Jemison, to aid in the preparation of his defense on May 12, 2011. Trial counsel only communicated with [the] investigator approximately 2.4 hours between May 4, 2011, and June 27, 2011; however, a majority of the investigator's work (approximately 23.75 hours) on the case took place between June 28, 2011, and November 14, 2011. There is no record of trial counsel communicating with the investigator after June 28, 2011.

"7. Because trial counsel admitted that he does not have the expertise in criminal investigation work to investigate facts and witnesses surrounding the alleged crime with which [Wallis] was charged, it is reasonable to believe that trial counsel's failure to investigate and/or utilize the services provided through the court to hire an investigator, resulted in material evidence that could have been discovered and would have provided information essential to developing theories of mitigation at trial.

"8. Trial counsel's performance was clearly deficient whereas he made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

(C. 1047-49.)

The above paragraphs clearly assert a claim of ineffective assistance of counsel, but in no way, shape, or form can they be reasonably construed as asserting a claim of equitable tolling. Unlike Kuenzel, in which the petitioner asserted that he did not raise his

19

postconviction claims earlier because he was litigating other claims in federal court and argued that the State would not be prejudiced by allowing him to present the claims in an untimely fashion, Wallis asserted no facts whatsoever in the above paragraphs explaining why he waited almost six years after his conviction and sentence were final to raise his claims of ineffective assistance of counsel. The only facts he alleged concerned his trial counsel's actions before Wallis's trial.

That being said, as noted above, Wallis alleged at the beginning of his amended petition that he had been in prison since he was sentenced in February 2012, thus making it "impossible" for him to have ascertained the claims through the exercise of reasonable diligence before he filed his petition in February 2019. (C. 1043.) To the extent that this allegation could be liberally construed as an assertion of equitable tolling, "'the difficulties of prison life are not extraordinary circumstances warranting equitable tolling.'" Munt v. State, 984 N.W.2d 242, 248-49 (Minn. 2023) (quoting Roby v. State, 808 N.W.2d 20, 30 (Minn. 2011)). "Since equitable tolling is only appropriate upon a showing of 'extraordinary circumstances,' ... the 'commonly shared' limitations of prison life experienced by prisoners at large cannot be a basis for

equitable tolling." <u>Peterson v. Green</u>, (No. GJH-16-1148, July 6, 2018) (S.D. Md. 2018) (citation omitted) (not reported in Fed. Supp.). See also <u>Moreland v. Eplett</u>, 18 F.4th 261, 271 (7th Cir. 2021) ("'[C]ommon parts of prison life,' taken alone, are … not considered 'extraordinary.'" (citation omitted)); and <u>Cisco v. United States</u>, (No. 3:15-CR-00007) (S.D.W.V. 2018) (not reported in Fed. Supp.) ("[O]rdinary aspects of prison life, such as restricted access to legal reference materials or assistance, do not provide a basis for equitable tolling.").

Wallis was not entitled to equitable tolling, and his claims of ineffective assistance of counsel are, as the circuit court found, time-barred by Rule 32.2(c).

## III.

Rule 32.7(d), Ala. R. Crim. P., authorizes the circuit court to summarily dismiss a petitioner's Rule 32 petition

"[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings ...."

See also <u>Hannon v. State</u>, 861 So. 2d 426, 427 (Ala. Crim. App. 2003); <u>Cogman v. State</u>, 852 So. 2d 191, 193 (Ala. Crim. App. 2002); <u>Tatum v.</u>

State, 607 So. 2d 383, 384 (Ala. Crim. App. 1992). Because Wallis's claims were either insufficiently pleaded or time-barred by Rule 32.2(c), summary disposition of Wallis's Rule 32 petition was appropriate.

Based on the foregoing, the judgment of the circuit court is affirmed.

AFFIRMED.

Windom, P.J., and McCool, Cole, and Minor, JJ., concur.